**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                          No. 01-4802

TERENCE JEROME RICHARDSON,
            *Defendant-Appellant.*


UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                          No. 01-4803

FERRONE CLAIBORNE, a/k/a Ron,
            *Defendant-Appellant.*


Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CR-00-383)

Submitted: September 11, 2002

Decided: October 29, 2002

Before WILKINS, WILLIAMS, and KING, Circuit Judges.

---

Affirmed in part and dismissed in part by unpublished per curiam
opinion.

**COUNSEL**

Michael Hu Young, BARNES & BATZLI, P.C., Glen Allen, Virginia, for Appellant Richardson; Charles A. Gavin, BLACKBURN, CONTE, SCHILLING & CLICK, P.C., Richmond, Virginia, for Appellant Claiborne. Paul J. McNulty, United States Attorney, David J. Novak, Assistant United States Attorney, Thomas E. Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Terence Richardson and Ferrone Claiborne (collectively, "Appellants") appeal their convictions and sentences for conspiracy to distribute 50 grams or more of cocaine base. *See* 21 U.S.C.A. § 846 (West 1999). We affirm in part and dismiss in part.

I.

Beginning in 1991, Appellants sold cocaine base for the "Dogwood crew" on Dogwood Street in Waverly, Virginia. A few years later, Appellants began selling cocaine base at the nearby Waverly Village Apartments (the Village).

On the morning of April 25, 1998, after Appellants and another individual, Shawn Wooden, obtained a quantity of cocaine base at the Village, the three men walked into some nearby woods. Officer Allen Gibson of the Waverly Police Department observed them and began to follow. As Wooden began to sample the cocaine base, Gibson approached the three men and ordered them to halt. Gibson attempted to apprehend Richardson by grabbing his T-shirt as he tried to run

away. Claiborne then grabbed Gibson from behind. During the ensuing struggle, Richardson shot Gibson in the stomach with Gibson's firearm. Richardson, Claiborne, and Wooden fled.

Police arrived at the scene later that morning and found Gibson lying in the woods. His weapon was approximately ten feet away. Although Gibson was losing consciousness he was able to state that he had followed two males into the woods because he thought they were dealing narcotics. Gibson's description of the two men, with a few minor inconsistencies, matched that of Appellants. Gibson also stated that he had struggled with the men and that they had taken his firearm. Gibson explained that he tried to point the weapon away from himself, but then "[t]hey shot me with my own . . . gun." J.A. 89 (internal quotation marks omitted). Gibson died later that day.

The day after the shooting, police arrested Richardson and seized from his father's home a T-shirt that Richardson was wearing on the day Officer Gibson was shot. Two days later, police arrested Claiborne. Both men claimed to have been elsewhere at the time of the shooting. In December 1999, however, Richardson pleaded guilty in state court to the involuntary manslaughter of Gibson, and Claiborne pleaded guilty to being an accessory after the fact.

A firearms examiner determined that the trigger pull on Gibson's firearm was 7.5 pounds and that the weapon had three safety features to prevent an unintended firing. The examiner also determined that the fatal shot was fired six to twelve inches from Gibson's body, with twelve inches being the more likely distance.

Appellants were indicted for conspiring to distribute 50 grams or more of cocaine base, *see* 21 U.S.C.A. § 846; killing a law enforcement agent during narcotics trafficking, *see* 21 U.S.C.A. § 848(e)(1)(B) (West 1999); and using a firearm to commit murder during narcotics trafficking, *see* 18 U.S.C.A. § 924(j) (West 2000). A jury convicted Appellants of the narcotics conspiracy but acquitted them of the murder and firearms charges.

At sentencing, the district court applied a cross-reference to the first degree murder guideline based on its factual finding, by clear and convincing evidence, that Appellants had "killed [Gibson] under cir-

cumstances that would constitute murder under 18 U.S.C. § 1111."
*United States Sentencing Guidelines Manual* § 2D1.1(d)(1) (2001).
Application of the cross-reference yielded a base offense level of 43
for both Appellants. The district court determined that the Guidelines
directed imposition of life sentences.

Appellants then moved for a downward departure on the grounds
that they had been prosecuted in state court for Gibson's murder, they
had been acquitted of the federal murder charge, and they were now
faced with presumptive life sentences based on the cross-reference.
The district court expressly recognized that it could depart downward
but declined to do so, explaining that this case was not atypical
because deaths are often caused by the use of firearms in connection
with narcotics trafficking, the killing of Gibson was very serious, and
the successive prosecutions were not onerous.

## II.

Appellants first claim that there was insufficient evidence to sup-
port their convictions, arguing that their individual sales of cocaine
base on Dogwood Street and at the Village were too fragmented and
sporadic to constitute the single conspiracy that was charged. To
decide whether the evidence is sufficient to support Appellants' con-
victions, we must determine whether "there is substantial evidence,
taking the view most favorable to the Government, to support" the
verdict. *Glasser v. United States*, 315 U.S. 60, 80 (1942).

The elements of a narcotics trafficking conspiracy are (1) the exis-
tence of an agreement between two or more persons to distribute nar-
cotics, (2) the defendant's knowledge of the conspiracy, and (3) the
defendant's knowing and voluntary participation in the conspiracy.
*See United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996) (en
banc). A single conspiracy exists when it has "the same objective,
. . . the same goal, the same nature, the same geographic spread, the
same results, and the same product." *United States v. Capers*, 61 F.3d
1100, 1107 (4th Cir. 1995) (internal quotation marks omitted). Fur-
ther, a single conspiracy may be found even when there is "a loosely-
knit association of members linked only by their mutual interest in
sustaining the overall enterprise." *Id.* (internal quotation marks omit-
ted).

Here, the evidence showed that Appellants and their various coconspirators often sold cocaine base together on Dogwood Street and at the Village. Further, there was an overlap of participants, suppliers, customers, and time at these locations. Thus, the evidence amply supported Appellants' narcotics conspiracy convictions.[1]

## III.

Appellants advance several legal and factual arguments challenging the application of the murder cross-reference. We review the factual findings of the district court for clear error, and we review its legal interpretation of the Sentencing Guidelines de novo. *See United States v. Dawkins*, 202 F.3d 711, 714 (4th Cir. 2000).

## A.

Appellants first argue that application of the cross-reference violates due process because it punishes them under the *first* degree murder guideline, even though the district court found that they had committed a *second* degree murder. We disagree. First, it is clear that a defendant has no due process right to a particular sentence within the range authorized by statute. *See Gardner v. Florida*, 430 U.S. 349, 358 (1977) (plurality opinion). Here, Appellants were sentenced within the statutory maximum—life imprisonment—for their offense of conviction, conspiracy to distribute 50 grams or more of cocaine base. *See* 21 U.S.C.A. § 841(b)(1)(A)(iii) (West 1999 & Supp. 2002). Further, as the Supreme Court has explained, "sentencing enhance-

---

[1]Appellants also contend that the Government's witnesses were unreliable because many of them were narcotics offenders who sought leniency in their own cases. This argument ignores that the jury, not this court, determines witness credibility. *See United States v. Wilson*, 118 F.3d 228, 234 (4th Cir. 1997). Indeed, the witnesses' criminal records, inconsistent statements, and agreements with the Government were fully disclosed to the jury.

Claiborne argues that the district court erred in admitting evidence of narcotics sales he made while he was a minor. This argument fails because it is clear that Claiborne continued to participate in the narcotics conspiracy after he became an adult. *See United States v. Spoone*, 741 F.2d 680, 687 (4th Cir. 1984).

ments do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction." *United States v. Watts*, 519 U.S. 148, 154 (1997) (per curiam). Thus, there was no due process violation.

We also reject Appellants' argument that the cross-reference violates nondelegation and separation of powers principles because it "creates" a new offense—second degree murder committed during a narcotics crime, punishable by life imprisonment. The Sentencing Guidelines do not create any offenses; they determine punishment based on the manner in which an offense is committed. *See id.*; *Witte v. United States*, 515 U.S. 389, 402-03 (1995).

In addition, the Supreme Court has rejected arguments that the Sentencing Guidelines as a whole violate nondelegation and separation of powers principles. *See Mistretta v. United States*, 488 U.S. 361, 412 (1989). And, § 2D1.1(d)(1) is consistent with Congress' intent to provide increased punishment when the offense of conviction is accompanied by other criminal activity. *See id.* at 375, 377.

Appellants' argument that application of the cross-reference violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000), is also meritless. In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. The "prescribed statutory maximum" is found by reference to the statute of conviction, not the Sentencing Guidelines, as Appellants contend. *See United States v. Kinter*, 235 F.3d 192, 200-01 (4th Cir. 2000), *cert. denied*, 532 U.S. 937 (2001). Here, Appellants were sentenced within the statutory maximum—life imprisonment—for their offense of conviction. *See* 21 U.S.C.A. § 841(b)(1)(A)(iii). Thus, *Apprendi* is inapplicable.

### B.

We now turn to Appellants' factual challenges to the application of the murder cross-reference. For the cross-reference to apply, a homicide must meet the statutory definition of murder under 18 U.S.C.A.

§ 1111 (West 2000). *See* U.S.S.G. § 2D1.1(d)(1). That statute defines murder as "the unlawful killing of a human being with malice afore-thought." 18 U.S.C.A. § 1111(a).

We conclude that the district court did not commit clear error in finding that Appellants killed Officer Gibson. The district court based this finding on Gibson's reasonably accurate description of the Appellants as his assailants, the corroborating testimony of Wooden and another eyewitness, Appellants' guilty pleas in state court, and their false alibis. These facts amply support the finding that Appellants murdered Gibson.

Similarly, the finding of the district court that Appellants killed Gibson with malice aforethought is not clearly erroneous. The district court emphasized that the three men struggled and that Claiborne pulled Gibson from the back while Richardson pulled him from the front. Further, the court noted that Gibson's firearm had a medium trigger pull and three safety features to prevent an accidental shooting, and that Richardson had the weapon in his hand after the shot was fired. This evidence supports the conclusion that Richardson intentionally shot Gibson. At the very least, malice was established because Appellants engaged in reckless and wanton conduct that presented a high risk of death or serious bodily harm to Gibson. *See United States v. Fleming*, 739 F.2d 945, 947-48 (4th Cir. 1984).[2]

C.

Finally, Appellants argue that the district court erred in denying their motions for a downward departure. We may review a refusal to

---

[2]We need not resolve the parties' disagreement about whether the district court properly applied a clear and convincing evidence standard, rather than a preponderance of the evidence standard, to its factual findings at sentencing. Under either standard, the evidence amply supported the findings of the district court, so there was no clear error. *See United States v. Montgomery*, 262 F.3d 233, 249-50 (4th Cir.), *cert. denied*, 122 S. Ct. 576 (2001).

Also, because we affirm the application of the murder cross-reference, we do not consider Appellants' arguments that the narcotics quantity findings by the district court were erroneous.

depart downward only if the district court erroneously believed that it lacked the authority to do so. *See United States v. Aramony*, 166 F.3d 655, 665 (4th Cir. 1999). Here, the district court expressly recognized its power to depart, but it denied Appellants' motions on the merits. Thus, the decision to deny the downward departure motions is not reviewable, and we dismiss that portion of the appeal.

## IV.

For the reasons set forth above, we affirm Appellants' convictions and sentences, and we dismiss the part of the appeal challenging the denial of Appellants' downward departure motions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED IN PART; DISMISSED IN PART*